IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 24, 2024

**STATE OF TENNESSEE v. ALEXIS FAXON**

**Appeal from the Criminal Court for Sullivan County**
**No. S75997   James F. Goodwin, Jr., Judge**

_____

**No. E2023-01480-CCA-R3-CD**

_____

Defendant, Alexis Faxon, was convicted by a Sullivan County jury of reckless driving and speeding which resulted in a fatal two-car accident. The trial court sentenced Defendant to consecutive sentences of thirty days' incarceration for speeding and six months suspended to probation for reckless driving. Defendant appeals, arguing that the evidence is insufficient to support her conviction for reckless driving, that the trial court erred by denying a mistrial based on alleged discovery violations, and that the trial court erred by admitting photographs and victim impact statements at the sentencing hearing and by ordering thirty days' incarceration. Upon our review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Daniel B. Minor, Kingsport, Tennessee, for the appellant, Alexis Faxon.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Barry P. Staubus, District Attorney General; and Louis Torch and Alex Griffith, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

Around 6:00 a.m. on August 9, 2021, Kingsport Police Department ("KPD") Corporal Matthew McGuire responded to a two-vehicle accident on John B. Dennis Highway. Corporal McGuire testified as an expert in accident reconstruction. He explained that John B. Dennis Highway had three southbound lanes and three northbound lanes divided by a concrete barrier. The speed limit on the highway was forty-five miles

per hour, and Corporal McGuire stated that a vehicle traveling north on John B. Dennis Highway would have passed at least two speed limit signs. A map showing where speed limit signs were posted was exhibited to Corporal McGuire's testimony. Corporal McGuire agreed that the relevant section of the highway was flat and that there was "good visibility in both directions[.]" He explained that at 6:00 a.m., there were "a lot of vehicles" traveling to work on John B. Dennis Highway.

Corporal McGuire arrived at the scene of the accident around 6:10 a.m. and scanned the scene with a "Faro Scanner" which "scans the scene as it is right now, and it does a 360º scan of the entire scene around, and a 270º around." Corporal McGuire also created a not-to-scale diagram of the accident scene, which was exhibited to his testimony. He explained:

> Vehicle 1, . . . the Jeep Wrangler that Mr. Green[e] was driving . . . was traveling south on John B. Dennis Hwy. and had entered into the turn lane and was attempting to turn left . . . . Vehicle #2 [a Toyota 4Runner] was traveling north on S. John B. Dennis Hwy., obviously going straight [in the middle lane], and as you see the Vehicle #2 collided with Vehicle #1, which caused Vehicle #1 to rotate at least three times. . . .
>
> . . .
>
> . . . . [W]hen the Toyota 4Runner struck the Jeep, . . . it wasn't a true head on, wasn't a t-bone, but it was an angular collision. The momentum that was transferred into Mr. Green[e's] vehicle, the Jeep, which caused the rotation that you see in the diagram. At some point during the rotations, Mr. Green[e], due to not being properly restrained, came out of the . . . rear of the vehicle. All the other doors and windows were still intact on the Jeep, but the only window that was open, or broken, was the rear window, in the very back of the car.

Corporal McGuire identified Defendant in court as the driver and sole occupant of the Toyota 4Runner. To Corporal McGuire's knowledge, Defendant was not impaired at the time of the accident. Corporal McGuire affirmed that the airbags in both vehicles deployed due to the accident. Both Defendant and Mr. Greene were transported to the hospital with serious injuries. Mr. Greene later died as a result of his injuries.

Corporal McGuire created a "360º Momentum Analysis Report" by putting the data from the Faro scanner into "multiple formulas" to "get an average of what [Defendant's] speed was at the time of the collision[.]" Corporal McGuire ran the formulas three times and calculated Defendant's average range of speed to be between sixty-two and sixty-six

miles per hour. He explained, however, that the data from the black box was "[b]y far . . . more accurate." He stated that "[one] mile an hour over the posted speed limit" was speeding. He agreed that it would be dangerous to travel between sixty-two and sixty-six miles per hour on John B. Dennis Highway "[d]ue to the traffic volume[.]"

On August 12, 2021, Defendant signed a consent form for Corporal McGuire to obtain the "black box" and its data from Defendant's Toyota 4Runner ("Defendant's black box").[1] Corporal McGuire worked with Parham Engineering Consultants who downloaded the data on September 30, 2021, and created a Crash Data Retrieval ("CDR") Report.

On cross-examination, Corporal McGuire stated that he did not know whether Mr. Greene had stopped prior to initiating the left turn or if there were other vehicles or pedestrians nearby when the accident occurred. He explained that the accident was caused by Mr. Greene's failure to yield and Defendant's speeding. Corporal McGuire agreed that it was dark when the accident occurred and that Mr. Greene "[s]hould have" been able to see Defendant approaching from half of a mile away. The damage to the Jeep Wrangler was to the front passenger side of the vehicle, and the damage to the Toyota 4Runner was to the front driver side bumper and fender area. He affirmed that Defendant had to be "cut out" of the Toyota 4Runner. Corporal McGuire agreed that he was "not accusing [Defendant] of swerving from one lane, or the other lane." He affirmed that the accident occurred in the middle northbound lane and that Defendant was traveling straight at the time of the accident.

On redirect examination, Corporal McGuire stated that he had investigated many accidents in his career and had seen accidents when one vehicle was going forty-five miles per hour and the other vehicle was mostly stationary have "significant damage, but not to the point where drivers or occupants had to be cut out." He denied ever seeing the front of a vehicle "completely pushed up to the windshield" when the vehicle was traveling forty-five miles per hour.

James Norris testified as an expert in accident reconstruction. Mr. Norris was employed by Parham Engineering Consultants and explained that the company performs forensic engineering regarding motor vehicle accident reconstruction. In this case, Mr. Norris met with Corporal McGuire to extract data from the "airbag control unit" of Defendant's Toyota 4Runner. He explained that the airbag control module was "very similar in function" to a black box in an airplane and agreed that it would be fair to characterize it as a black box. He explained that the black box:

---

[1] At trial, Defendant repeatedly attempted to object to the removal of the Crash Data Retrieval system as a warrantless search. However, the trial court found that Defendant had waived the issue by failing to file a pretrial motion to suppress. *See* Tenn. R. Crim. P. 12(b)(2)(C). Defendant does not raise this issue on appeal.

records the forces related to the impact, g-forces, acceleration forces, changes in speed, because that's really what's going to determine the severity of the impact and whether or not the airbags need to deploy. As a by-product to that too, it will also record pre-crash data, typically, for about five seconds or so leading up to the collision event. In that preset data, depending on the manufacture[r], you're going to get speed, braking, throttle, or accelerator position, even the information possibly about steering.

Mr. Norris used "the Bosch Crash Data Retrieval System" to download the data from Defendant's black box. He explained that "you cannot alter or change the data at all, and also, the data is stored in a raw file that . . . can always be opened up down the road with the software." Mr. Norris identified page twelve of the twenty-eight-page report produced from the black box data, and that portion of the report was admitted into evidence. According to the report, Defendant was traveling at 80.2 miles per hour 2.05 seconds before the accident, accelerated to 80.8 miles per hour "approximately half a second" before the accident, and then "less than a half a second" before the accident decelerated to 72.7 miles per hour. Mr. Norris stated that the brakes were applied "a little over a half of [a] second prior to impact[.]"

On cross-examination, Mr. Norris stated that he had been retained by Mr. Greene's insurance company, but he was subpoenaed by the State to appear in court for trial. He testified that in the dark, a person would not be able to determine the specific speed of a vehicle driving toward that person but would be able to determine the "relative speed." Mr. Norris opined that "based upon the grade of the [John B. Dennis Highway], there's no curvature, there's no hill that would obstruct the view," a person would be able to see headlights from a distance of "several hundred feet . . . possibly a thousand feet or more" at night. The following exchange then occurred:

[Defense counsel]: Okay. Now, in all of your tests, there's nothing to show . . . whether [Mr. Greene] stopped or didn't stop there, at the scene, is there, there is nothing on your data that shows that?

James Norris: When you say, "my data", what are you talking about specifically?

[Defense counsel]: Well, when I say "your data", the data that was furnished to you on the black box, I realize it's not your data, sir, I'm sorry. There's nothing to show whether he stopped and pulled out or did not stop, is there?

James Norris: Again, are you talking about this data from her vehicle or data from his vehicle?

- 4 -

[Defense counsel]:  No, well, was there any data from his vehicle?

James Norris: Sure.

[Defense counsel]: Did you see it?

James Norris: I sure did.

[Defense counsel]: What did it show?

James Norris: It did show that he was stopped before the accident.

The State then rested its case.  Defendant elected not to testify and did not present proof.  Defendant moved for a mistrial based on the State's failure to produce the black box from Mr. Greene's vehicle ("Mr. Greene's black box").  Defendant also moved for a judgment of acquittal arguing that speed alone cannot establish reckless driving.  The State asserted that there was not a discovery violation because prior to Mr. Norris's testimony, it was unaware of the data from Mr. Greene's black box, and even if there had been a discovery violation, the data was irrelevant to the criminal trial.  The trial court found that the State was unaware of the data from Mr. Greene's black box and denied a mistrial.  Based on *State v. Wilkins*, 654 S.W.2d 678, 680 (Tenn. 1983), the trial court denied the motion for judgment of acquittal stating that it was "up to the jury, as the finder of fact, to consider [which speed testified to] was the appropriate one, and whether or not that degree of speed is a speed that's so fast that it would constitute willful and wanton disregard to persons or property."

Based on the above evidence, the jury convicted Defendant as charged for reckless driving and speeding and imposed $500 and $50 fines respectively.

Prior to the sentencing hearing, the presentence report was filed with the clerk and was subsequently amended to include Corporal McGuire's agency statement recommending a probationary sentencing.[2]  At the sentencing hearing on July 7, 2023, Mr. Greene's son and daughter read victim impact statements, and Mr. Greene's daughter-in-law read a victim impact statement on behalf of Mr. Greene's widow.  The State entered five photographs showing Mr. Greene with family members.  Defendant did not object to

---

[2] While the presentence report appears in the technical record, it is unclear whether it was introduced as an exhibit at the sentencing hearing.  However, the trial court specifically considered and referenced the presentence report filed with the clerk's office and neither party raises this an issue on appeal. *See State v. Blaylock*, No. 02C01-9602-CC-00069, 1997 WL 475163, at *8 n.2 (Tenn. Crim. App. Aug. 21, 1997) (analyzing the importance of introducing a presentence report into evidence at sentencing before finding that any error was either waived by failure to raise or harmless).

the admission of the victim impact statements or the photographs. Defendant did not offer proof and instead relied on the presentence report, which included a letter from Corporal McGuire stating that "probation would be [an] appropriate sentenc[e] based on the facts of the case[.]" The State requested that the trial court impose jail time and "at least 100 hours of Community Services" noting that it was "exceedingly disturbed" that Defendant had not "learned her lesson[]" after receiving five prior speeding tickets. The State argued that Defendant had "shown no remorse from the fact that she never took responsibility for her actions."

The trial court considered the evidence presented at trial and at the sentencing hearing, the presentence report, the principles of sentencing, the arguments made as to sentencing alternatives, nature of the criminal conduct involved, any applicable mitigating and enhancement factors, and the statistical information provided by the administrative office of the courts regarding sentencing practices for similar offenses. The trial court noted that Defendant's presentence report was generally positive, but Defendant's lack of remorse and her prior record were "negative." The trial court recounted Defendant's prior speeding tickets and accidents and noted that Defendant had been involved in an accident and had been issued another speeding ticket while this case was pending. The trial court explained that "in a normal case . . . I wouldn't think twice about this prior record as being a consideration[,] but here she has continued to exhibit over and over and over the exact same behavior that led to this crash."

The trial court imposed thirty days' incarceration with 75% release eligibility for the speeding conviction and a consecutive sentence of six months, suspended to probation, for the reckless driving conviction. The trial court found "based on [Defendant's] history of speeding that straight probation would depreciate the serious nature of this offense and the result of a death. She is going to have to serve [thirty] days in the county jail and she'll be placed on supervised probation for [six] months." The trial court ordered Defendant to complete seventy-five hours of community service, write a letter of apology to Mr. Greene's family, and to undergo an evaluation for drug and alcohol treatment and follow any course of treatment deemed necessary.

Defendant filed a timely motion for new trial, which the trial court denied. Defendant's timely appeal is now before this court.

**Analysis**

Defendant's brief enumerates eleven separate claims; however, for clarity and brevity, we will summarize and address those claims as three main issues: (1) whether there was sufficient evidence to support Defendant's conviction for reckless driving; (2) whether the trial court erred in denying a mistrial based upon alleged discovery violations; and (3)

whether the trial court erred at sentencing by considering victim impact testimony, admitting photographs of Mr. Greene, and denying probation. *See State v. Good*, No. E2009-00926-CCA-R3-CD, 2010 WL 3706625, at *9 (Tenn. Crim. App. Sept. 23, 2010) (combining and analyzing the defendant's similar issues under the sufficiency of the evidence)

## I. Sufficiency of the Evidence

Defendant does not challenge her conviction for speeding but argues that the evidence was insufficient to support her reckless driving conviction because speeding, without more, cannot establish "willful and wanton disregard for persons or property[.]" Defendant further asserts that the trial court erred in its role as thirteenth juror by not dismissing the jury's reckless driving conviction. The State asserts that speed alone, or in combination with the traffic conditions and Defendant's failure to brake or take any action to avoid the collision, sufficiently established that Defendant drove recklessly. We agree with the State that the evidence was sufficient to support Defendant's conviction.

A trial court may grant a new trial after a verdict of guilt by a jury if it "disagrees with the jury about the weight of the evidence." Tenn. R. Crim. P. 33(d). However, an appellate court will only reverse the trial court's judgment based on its failure to overturn a guilty verdict in its role as thirteenth juror when the record contains statements from the trial judge expressing disagreement with the weight of the evidence or indicating that the trial court abdicated its responsibility to act as the thirteenth juror. *State v. Schutt*, No. M2022-00905-CCA-R3-CD, 2023 WL 6120739, at *5 (Tenn. Crim. App. Sept. 19, 2023) (first citing *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995); and then *State v. Burlison*, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993)), *no perm. app. filed.* Here, the trial court affirmed the verdict of the jury and reaffirmed its agreement with the jury's verdict at the hearing on the motion for new trial. Because the trial court fulfilled its duty as the thirteenth juror, this court's review is limited to the sufficiency of the evidence. *See id.*

When evaluating the sufficiency of the evidence on appeal, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see* Tenn. R. App. P. 13(e). The standard of review is the same whether a conviction is based on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (quoting *Hanson*, 279 S.W.3d at 275). Further, the

State is afforded "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

The jury evaluates the credibility of the witnesses, determines the weight to be given to witnesses' testimony, and reconciles all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379. A guilty verdict "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997) (citing *State v. Grace*, 493 S.W.3d 474, 476 (Tenn. 1973)). This court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *Bland*, 958 S.W.2d at 659).

"Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property commits reckless driving." T.C.A. § 55-10-205(a). Our supreme court has explained that:

> [w]illful and wanton disregard for another's safety is a factual question properly determined from all the circumstances. It exceeds negligence in that the actor willfully breaches a duty. While [twenty] miles per hour without more is not "willful and wanton," we do not think such can be said for all speeds. Indeed, we think it is within the discretion of the finder of fact to consider that a motor vehicle's speed can be so fast as to constitute willful and wanton disregard for persons or property, be it the person and property of the driver or others on the road or in the area

*Wilkins*, 654 S.W.2d at 680. In assessing whether a defendant operated a vehicle with "willful or wanton disregard," the finder of fact may consider the traffic, weather, and road conditions. *Id.* at n.1.

When viewed in the light most favorable to the State, the evidence showed that John B. Dennis Highway had a posted speed limit of forty-five miles per hour, was flat, and had "good visibility" in both directions. John B. Dennis Highway had "a lot of" traffic in the early morning hours with people traveling to work. Corporal McGuire stated that a vehicle traveling north on John B. Dennis Highway would have passed at least two posted speed limit signs.

It was dark just before 6:00 a.m. on the date of this incident; Defendant was traveling in the middle of three northbound lanes and Mr. Greene was traveling in the southbound lanes before coming to a stop to make a left-hand turn across the northbound lanes of John B. Dennis Highway. Based on the data collected from Defendant's black box, Defendant was traveling at 80.2 miles per hour approximately two seconds before the accident. Defendant applied her brakes "a little over a half of [a] second prior to impact," causing her vehicle to decelerate to 72.7 miles per hour. Defendant's vehicle collided with Mr. Greene's turning vehicle, causing Mr. Greene's vehicle to rotate at least three times and ejecting Mr. Greene, who was not wearing a seatbelt, through the rear windshield before coming to a stop. Defendant had to be extracted from her vehicle. Both Defendant and Mr. Greene were transported to the hospital with serious injuries. Mr. Greene later died from his injuries.

Contrary to Defendant's assertion, *Wilkins* did not establish a bright-line rule that speed alone cannot establish reckless driving. *See Wilkins*, 654 S.W.2d at 680. The State was not required to prove that "a collision could have been reasonably anticipated" in order to establish the statutory elements of reckless driving. The jury could have reasonably determined that traveling thirty-five miles per hour over the speed limit on a heavily trafficked road while it was dark constituted "willful and wanton disregard for the safety of persons or property." *See State v. Crehan*, No. M1999-02542-CCA-R3-CD, 2000 WL 1672634, at *2-3 (Tenn. Crim. App. Nov. 7, 2000) (affirming reckless driving conviction based on the defendant passing four "tobacco tractors" by traveling at seventy-six miles per hour in a fifty-five mile-per-hour-speed zone) *no perm. app. filed*; *State v. Schmitz*, No. M2019-01254-CCA-R3-CD, 2021 WL 529360, at *4 (Tenn. Crim. App. Feb. 12, 2021) (affirming reckless driving conviction based on the defendant's driving sixteen miles per hour above the posted speed limit and ignoring police sirens and lights before cresting a hill and turning into a driveway). Further, the jury was presented with the additional proof that Defendant had passed at least two speed limit signs, upon which it could have reasonably concluded that Defendant breached a duty to abide by the law. The evidence was sufficient to support Defendant's reckless driving conviction. Defendant is not entitled to relief on this basis.

## II. Denial of Mistrial

Defendant argues that the trial court erred "by not granting [a] mistrial and/or [a] new trial based on the State's failing to comply with defense discovery requests by not providing the black box in its custody from [Defendant's] vehicle, the black box from Mr. Greene's Jeep that was in the custody of James Norris, and the data download from [Mr. Greene's black box]." Defendant asserts that her defense was prejudiced by not receiving the physical black boxes because she was deprived of the opportunity to have her own expert inspect the black boxes. She further asserts that the data from Mr. Greene's black

box was exculpatory "from both a culpability and punishment standpoint" and that had she received the data from Mr. Greene's black box she would have changed her defense theory at trial. The State argues that there was not a discovery violation, and even if there was one, Defendant failed to establish that there was a manifest necessity for a mistrial. We agree with the State.

Pursuant to Tennessee Rule of Criminal Procedure 16, upon a defendant's request, the State must permit a defendant to inspect tangible objects if: (1) "the item is material to preparing the defense;" (2) the State intends to use the tangible item in its case-in-chief; or (3) "the item was obtained from or belongs to the defendant." Tenn. R. Crim. P. 16(a)(1)(F). Additionally, the State must allow a defendant to inspect and copy the results of scientific tests if the item is within the State's "possession, custody, or control," the State knows, or could know through the exercise of due diligence that the item exists, and the item is either material to the defense or the State intends to use the item in its case-in-chief. *Id.* 16(a)(1)(G). "If a party failed to comply with the rules of discovery, the court may order that party to permit the discovery or inspection; grant a continuance; prohibit the party from introducing the undisclosed evidence; or order other relief as it deems just under the circumstances." *State v. Jackson*, No. W2017-01782-CCA-R3-CD, 2018 WL 6266163, at *2 (Tenn. Crim. App. Nov. 29, 2018).

This court will not interfere with a trial court's exercise of its discretion regarding whether to grant a motion for mistrial "absent a clear abuse of discretion on the record." *State v. Hansard*, No. E2021-01380-CCA-R3-CD, 2022 WL 17574357, at *4 (Tenn. Crim. App. Dec. 12, 2022) (quoting *State v. Bell*, 512 S.W.3d 167, 187 (Tenn. 2015)), *perm. app. denied* (Tenn. Apr. 17, 2023). A mistrial is appropriate only when there is a manifest necessity, meaning "a trial cannot continue, or a miscarriage of justice would result if it did." *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000); *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). The party requesting a mistrial carries the burden of establishing its necessity. *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008).

During the trial testimony of Mr. Norris, Defendant moved for a mistrial on the ground that the State had not disclosed "that there was a download on Mr. Greene's vehicle." Defendant's motion for new trial asserted that the trial court "erred by allowing Mr. James Norris to testify regarding *Mr. Greene's vehicle's retrieved data* . . . because the State failed to produce said information . . . pursuant to discovery requests[.]" In her amended motion for new trial, Defendant asserted that "after the Defendant had made two Motions for Discovery[, the State] failed to produce *the data retrieved from the Defendant's car*."

Regarding Defendant's claim that the State failed to provide Defendant's black box in response to her discovery request, the record reflects that Defendant did not raise this

- 10 -

issue at trial or in her written motion for new trial. While Defendant briefly argued this issue at the motion for new trial hearing, the trial court noted that the amended motion for new trial addressed only the data from Defendant's black box and determined that data was provided in discovery. Defendant failed to reduce her oral argument regarding Defendant's black box to writing after the hearing. An "issue raised orally in a motion for a new trial and not subsequently reduced to writing is waived." *State v. Thompson*, No. M2013-01274-CCA-R3-CD, 2014 WL 2609535, at *7 (Tenn. Crim. App. June 11, 2014) (citing *State v. Stewart*, No. M2008-00337-CCA-R3-CD, 2010 WL 2025407, at *4 (Tenn. Crim. App. May 21, 2010); *State v. Noles*, No. M2006-01543-CCA-R3-CD, 2007 WL 3274422, at *11 (Tenn. Crim. App. Nov. 6, 2007); *State v. Watson*, No. W2001-03084-CCA-R3-CD, 2002 WL 31258011, at *2 (Tenn. Crim. App. Sept. 16, 2002)); Tenn. R. Crim. P. 33(b) (providing that a motion for new trial shall be in writing). Thus, Defendant has waived her claim that the State failed to provide Defendant's black box.

Defendant raises two issues regarding Mr. Greene's black box: (1) the State failed to produce Mr. Greene's black box, thus depriving Defendant of the ability to have her expert examine it; and (2) the State failed to produce the data from Mr. Greene's black box which showed that Mr. Greene had stopped prior to turning left, information which would have changed the theory of the defense. First, Defendant did not move for a mistrial based on the State's failure to produce Mr. Greene's black box, nor did she include this issue in her motion for new trial or amended motion for new trial. Thus, Defendant has waived her objection regarding Mr. Greene's black box by raising it for the first time on appeal. *See State v. Avila-Salazar*, No. M2023-01649-CCA-R3-CD, 2024 WL 3738647, at *2 (Tenn. Crim. App. Aug. 9, 2024) (stating that a party cannot raise an issue for the first time or change their argument on appeal).

Regarding the data from Mr. Greene's black box, Defendant has failed to establish a discovery violation because neither of her motions for discovery requested this data. *See State v. Burgess*, No. M2013-00252-CCA-R3-CD, 2014 WL 309644 (Tenn. Crim. App. Jan. 28, 2014) ("The provisions of Rule 16 are triggered only by the request of a defendant. If the defendant failed to request these items via a Rule 16 motion filed prior to trial, he cannot establish a violation of the rules of discovery."). In her original motion for discovery, Defendant requested "[a]ny evidence, which is favorable to the defendant" and to "be allowed to inspect and copy or photograph any results of physical or mental examinations, and of scientific tests or experiments, or copies thereof[.]" Defendant's amended motion for discovery specifically requested that the State produce "any item taken from the defendant's vehicle i.e. instrument, car, door, or interior of said vehicle used to extract any crash data retrieved from said automobile." At the hearing on the motion for new trial, defense counsel stated that they "didn't ask for that [because] we didn't know that was in play[.]"

Even assuming that Defendant's discovery requests included the data from Mr. Greene's black box, Defendant has failed to establish that the data was in the State's "possession, custody, or control." *See* Tenn. R. Crim. P. 16(a)(1)(F). Mr. Norris testified that he downloaded that data which was retained by his company. The data was never in the custody of the State. In fact, the record shows that Mr. Norris was hired by Mr. Greene's insurance company, was later subpoenaed by the State to testify at trial, and that the State was unaware of the data until Mr. Norris testified. Because the State was unaware of the data, it did not elicit testimony about the date from Mr. Greene's black box in its case-in-chief. Further, Defendant has failed to show how the data "could have changed many things in the defense's theory of the case" because whether Mr. Greene stopped before initiating the left turn was irrelevant to Defendant's guilt or innocence for reckless driving and speeding.

Defendant is not entitled to relief on this basis.

### III. Sentencing

Defendant argues that the trial court erred when sentencing Defendant by failing to properly consider the purposes and principles of sentencing when it imposed thirty days' incarceration for her speeding conviction and by admitting victim impact statements and photographs of Mr. Greene at the hearing. Defendant does not challenge her sentence for reckless driving. The State asserts that the trial court did not abuse its discretion in sentencing Defendant. We agree with the State.

On appeal, the party challenging the sentence bears the burden of establishing that the sentence is improper. *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016). The "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2010) (citing *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012)). Our supreme court has stated that the *Bise* standard of review applies to all sentencing decisions. *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014). Further, this court has consistently applied the *Bise* standard to appellate review of misdemeanor sentencing, and we will do the same in this case. *State v. Jones*, No. W2022-01270-CCA-R3-CD, 2023 WL 3451553, at *2 (Tenn. Crim. App. May 15, 2023), *perm. app. denied* (Tenn. Aug. 9, 2023); *State v. Hite*, No. E2023-00563-CCA-R3-CD, 2024 WL 3913193, at *4 (Tenn. Crim. App. Aug. 23, 2024), *no perm. app. filed*. "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). Because

the trial court's sentencing decision was based on the proper considerations, we will review it for an abuse of discretion with a presumption of reasonableness.

In sentencing a defendant convicted of a misdemeanor offense, the trial court must "impose a sentence consistent with the purposes and principles of this chapter." T.C.A. § 40-35-302(b). Trial courts have "more flexibility in misdemeanor sentencing" and a defendant convicted of a misdemeanor is not presumed to be entitled to the minimum sentence. *Hite*, 2024 WL 3913193, at *4 (citing *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1998)). Thus, to comply with the misdemeanor sentencing statutes, the trial court must "only consider the principles of sentencing and enhancement and mitigating factors[.]" *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). A trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). Before imposing a sentence involving confinement, a trial court must consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

*Id.* § 40-35-103(1).

Contrary to Defendant's assertion, the trial court specifically stated that it had considered the purposes and principles of sentencing, the evidence presented at trial and at the sentencing hearing, the presentence report, arguments made regarding alternative sentencing, the nature of the criminal conduct involved, mitigating and enhancement factors, and statistical information provided by the administrative office of the courts. Further, the trial court specifically acknowledged Corporal McGuire's recommendation of a probationary sentence because it had been submitted after the presentence report was initially filed. The trial court could consider, but was not bound by, Corporal McGuire's sentencing recommendation. *See Franks v State*, 543 S.W.2d 613, 616 (Tenn. Crim. App. 1976) (noting that a more detailed probation report could include a sentencing recommendation but "certainly the trial judge is not bound by it").

- 13 -

In imposing a thirty-day sentence at 75% to be served in confinement, the trial court stated that "straight probation" would depreciate the seriousness of the offense based on Defendant's history of criminal behavior and lack of remorse. The trial court acknowledged that Defendant's presentence report was generally positive but said that Defendant had shown "no remorse." Defendant argues that the presentence report indicated Defendant's remorse in that Defendant "describe[d] mental anguish over being involved in another person losing their life." However, the trial court stated that in a "normal case" it would not "think twice about [Defendant's] prior record . . . but here she has continued to exhibit over and over and over the exact same behavior that led to this crash." The trial court specifically noted that Defendant had received another speeding ticket for traveling eighty-one miles per hour in a sixty-mile-per-hour zone, and she had been involved in another accident while this case was pending. The trial court did not abuse its discretion in sentencing Defendant to thirty days' incarceration.[3]

Next, Defendant asserts that the trial court erred by considering victim impact statements from Mr. Greene's family members, arguing that speeding and reckless driving are "victimless crimes" and that such statements are only allowed for victims of violent crimes. The State asserts that trial court did not abuse its discretion in admitting the victim impact statements. We conclude that Defendant has waived this issue.

Our review of the record reflects that Defendant failed to contemporaneously object to the introduction of the victim impact statements. While Defendant raised this issue in her motion for new trial, and the trial court addressed the same at the hearing, this does not cure Defendant's failure to object at the sentencing hearing. *See State v. Lewis*, No. W2011-02219-CCA-R3-CD, 2013 WL 1965226, at *11 (Tenn. Crim. App. May 13, 2013) (concluding that the defendant had waived his objection for failing to contemporaneously object to the reading of victim impact statements).

Waiver notwithstanding, any error in the admission of the victim impact statements was harmless. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). As noted, a trial court has broad discretion in misdemeanor sentencing so long as it considers any applicable enhancement and mitigating factors when determining the percentage of a sentence to be served in confinement. *Troutman*, 979 S.W.2d at 274 (citing T.C.A. § 40-35-302). Here, the trial court found that

---

[3] Although Defendant argues in her brief that the purposes and principles of sentencing supported "granting her home confinement with work release[,]" the record reflects that Defendant did not make this argument at sentencing, and as such we will not consider it. *See State v. Hardison*, 680 S.W.3d 282, 309 (Tenn. Crim. App. 2023) (stating that an appellant cannot "take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason on appeal").

Defendant had a history of speeding and other traffic violations and had not shown remorse for her actions, specifically noting that Defendant had been involved in another accident and received another speeding ticket while this case was pending. Further, the record does not reflect that the trial court placed any significant weight on the victim impact statements. Because the record otherwise supports the trial court's decision to impose thirty days' incarceration, any error in the admission of the victim impact statements was harmless. Defendant is not entitled to relief.

Finally, Defendant asserts that the trial court erred in admitting photographs of Mr. Greene because "[p]hotographs of a victim during life are only appropriate for homicide sentencing." As noted by the State, Defendant has waived this issue for failing to contemporaneously object at the sentencing hearing. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Pace*, No. W2022-01092-CCA-R3-CD, 2023 WL 6626457, at *6 (Tenn. Crim. App. Sept. 1, 2023) (finding the defendant had waived objection to the absence of a validated risk and needs assessment by failing to contemporaneously object at the sentencing hearing), *perm. app. denied* (Tenn. Apr. 11, 2024).

In reply to the State's waiver argument, Defendant states that the "State having raised the plain error doctrine in this context is helpful for the reason that the unequivocal rule of law would only allow photographs when there has been a criminal homicide." However, Defendant is not entitled to relief under plain error review because no "clear and unequivocal rule of law" was breached. *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (citing *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)) (stating that all five plain error factors must be present and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established"). Defendant cites no authority, and we find none, in support of her argument. Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JILL BARTEE AYERS, JUDGE

- 15 -